## ALLISON NAILOR *vs.* R. C. BOWIE.

In an action upon two promissory notes, the plaintiff offered in evidence the protests of the notes for the purpose of proving demand and notice. The first protest was altogether inadmissible, but the second was admissible to the extent of proving due demand and refusal. HELD, that it was error to reject both as inadmissible for the purposes for which they were offered.

Where part of the evidence offered is admissible as tending to prove the issue, it is error to exclude the whole from the jury.

The liability of an endorser is conditional; the holder takes the note with the understanding that demand and notice are precedent to his right to recover, and the endorser is entitled to strict notice.

If the maker absconds, this will generally excuse the demand; if he changes his residence within the same jurisdiction, the holder must endeavor to find it and make demand there; if he leaves the State subsequent to the making of the note, presentment at his former place of residence or business is sufficient.

If there is no other evidence of the maker's residence than the date of the note, the holder must inquire there; the presumption is that the maker resides where the note is dated, and that he contemplated payment there.

But if the maker resides elsewhere, within the same State, when the note falls due, and this is known to the holder, demand must be made at the maker's place of residence or of business.

The protest of a note stated, that the notary, at the request of the holders, presented at the bank of Metropolis, ("the drawer having removed from Washington, and having been previously informed at his late place of business, that he had not left any funds or made any provision for his notes,) the original note, and demanded payment thereof, which could not be obtained, as the drawer had not any money to his credit," &c.; and it being conceded that the demand at the bank was insufficient, the protest was *held* to be insufficient, because:

1st. Though the drawer may have removed from Washington, it does not necessarily follow that he could not have been found, on inquiry, at some other place within the same jurisdiction.

2nd. The court cannot infer that a demand was made, from what the notary says was the information he received at the drawer's late place of business; whether he presented the note there, or had it with him, does not appear.

3rd. A demand, without the presentation of the note, is in general no demand; when demand is made, the holder should be prepared and ready to produce the note.

4th. The law is equally stringent as to the *time* of demand; the word *"previously"* does not necessarily imply that it was made on the same day; plain and satisfactory proof of the *time* of service is necessary; the evi-

Nailor *vs.* Bowie.

dence must point not to a demand at *some* time, but show that it was made on the day prescribed by law.

Where the protest states, that "notice of protest" was sent to the endorser, and the manner of such notice, it implies a demand and refusal to pay by the maker, but this presumption cannot arise when the protest itself shows that no sufficient demand or refusal had been made.

Where a protest shows a personal demand on the maker and refusal, it is *prima facie* evidence of due demand and refusal.

The protest of a note payable generally, after stating demand, refusal to pay, &c., adds, that written notices were addressed to the endorsers "informing them that it had not been paid by the drawer thereof, and that they would be held responsible for its payment." HELD, that this notice was clearly insufficient as it does not inform the endorsers of a demand and refusal.

The plaintiff was not obliged to rely solely on the protest; he might have cured the defect by evidence *aliunde* the protest, and he has the right to commence with any part of his evidence; and it is error to reject any part that is, *per se*, pertinent to the issue.

When the plaintiff has closed, if there be a failure of proof as to any fact necessary to be proved, the defendant may ask an instruction that the evidence is not legally sufficient to maintain the action.

The protest of one of the notes being inadmissible, a prayer, which assumed the plaintiff's right of recovery upon both, was erroneous, and properly rejected.

APPEAL from Baltimore county court.

This was an action of *assumpsit*, brought by the appellant, as holder, against the appellee, as payee and endorser of two promissory notes, each for $100, drawn by one John Waring, payable generally to the order of the appellee, and each dated *Upper Marlborough*, July 30th, 1847, the one at eighteen, and the other at twenty-four months from date.    Plea, *non assumpsit.*

1*st Exception.* The plaintiff having proved the signatures of the maker and endorser, and that the defendant had been, from the 14th of December 1848, and still is, a resident of Baltimore, carrying on business there, in order to show a demand and notice offered the notarial protests of the notes. The protest of the first, after setting out the note, states, that on the 2nd of February 1849, the due-day of the note, the notary, "at the request of the trustees of the bank of the Metropolis, presented at said bank, (the drawer having re-

Nailor *vs.* Bowie.

moved from Washington, and having been previously informed at his late place of business, that he had not left any funds or made any provision for his notes,) the original note," " and demanded payment thereof, which could not be obtained as the drawer had not any money to his credit, therefore," &c.; "and same day deposited in the post office of Washington city notice of protest to the first endorser, viz., R. C. Bowie, directed to him at Baltimore, Maryland, and also a duplicate directed to him at Upper Marlborough, Maryland."

The protest of the second note, after stating a personal demand upon the maker, on the 2nd of August 1849, the due-day of the note, and his refusal to pay, adds, "and on the same day I addressed written notices to the drawer and endorsers of the said note, informing them that it had not been paid by the drawer thereof, and that they would be held responsible for its payment," directed to the endorser, "R. C. Bowie, Baltimore, Maryland," &c.

The defendant objected to the admissibility of these protests for the purpose aforesaid, and the court, (LE GRAND, A. J.,) sustained the objection, and the plaintiff excepted.

*2nd Exception.* The plaintiff prayed the court to instruct the jury, that if they find the making and endorsing of the notes as appears upon their face, that they were presented for payment and protested for non-payment, in the manner and at the times stated in the protests, and that notices of such demand and non-payment were sent in the manner and at the times stated in said protests, then the plaintiff is entitled to recover, which instruction the court refused to grant, and the plaintiff excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*St. George W. Teackle* for the appellant.

*1st Exception.* It is clear that the protest is admissible in evidence for some purpose. This exception does not em-

brace the question of the sufficiency of the notice. The act of 1837, ch. 253, puts inland bills and notes, upon the same footing as foreign bills stood at common law.   4 *Gill,* 194, *Barry vs. Crowley.*

As to the sufficiency of the notice on the *first note,* there can be no question, for it says he sent "*notice of protest.*" No notary is bound to go out of one State into another for the purpose of making presentment.   *Story on Prom. Notes, sec.* 236.   He has the right to look to the endorser, without any presentment, when such a state of facts occurs.   This is one of the chances which the endorser takes when he makes his contract.   Here the notary went to the late place of business of the maker, and was there informed that he had left the jurisdiction of the notary.   This is a substantial compliance with the law, it is due diligence.   9 *Wheat.,* 598.

As to the protest of the second note:   This case is distinguishable from the case of *Graham vs. Sangston,* 1 *Md. Rep.,* 59.   The endorser here had express notice that the note was not paid.

*Thos. G. Pratt* for the appellee.

If the protest was legally insufficient to go to the jury for the purposes for which it was offered, how could the court be wrong in refusing to let it go to the jury?   If there was other evidence which would have made the protest admissible, it ought to appear on the record, otherwise this court cannot reverse the judgment below.

As to first note:   The question is, whether the protest states a sufficient excuse for a non-demand?   Now the words of the protest are not evidence of the facts they recite.   We must look to the act of 1837 to see for what purpose the protest is admissible.   It is only made by that act evidence of *demand* and *notice,* not of the *excuse for non-demand.*   The notary says he did not make demand, because he had been *previously* informed that the maker had left Washington and had left no funds at his late place of business.   When informed is not stated.

In the case in *Wheat.*, and in all other cases, the fact of the removal is proved *aliunde* the protest. Here the note is dated at *Marlborough*, and therefore given in Marlborough, in Maryland, and where a note is drawn in a particular place, it is presumed to be the place of the maker's residence, and inquiry must be made there. *Bailey on Bills*, 198. 4 *Searg. and Rawle*, 480. He should moreover, on finding the place of business closed, have made inquiry as to the maker's residence.

As to the second note: The case of *Boehme vs. Carr*, *ante*, 202, is conclusive.

*Teackle* in reply.

The case of *Hunter vs. Van Bomhorst*, 1 *Md. Rep.*, 504, affirms the case in 4 *Gill*, as to the words "*notice of protest.*" Upon this point, then, the first note is unobjectionable. The act of 1837 has made the protest *per se*, *prima facie* evidence of demand and non-payment. This relieves the party from the necessity of proving a demand *aliunde*. The mere *fact* of protest is evidence sufficient to cast the *onus* on the other side,—we are not bound to prove that we presented it any where for payment.

As to the first exception: The court is bound to decide upon the admissibility of the evidence at the time it is presented, and if refused, the party has the right to except. How could the court know whether there was other evidence or not? The act of 1837 makes the protest *prima facie* evidence, and we had a right to have it read to the jury.

Tuck, J., delivered the opinion of this court.

The appellant sued the appellee as payee and endorser of two notes of John Waring, payable, respectively, at eighteen and twenty-four months from date. Having proved the making and endorsement of the notes, and that the appellee resided and had his place of business in Baltimore when they became due, he offered in evidence the protests set out in the record, for the purpose of proving demand and notice. The defend-

Nailor *vs.* Bowie.

ant objected to this evidence as inadmissible for the purpose for which it was offered, which objection was sustained. In this we think that the court erred, because, as part of the evidence tended to prove the issue, and was admissible, the whole should not have been excluded from the jury. *Budd vs. Brooke,* 3 *Gill,* 220. 1 *Md. Rep.,* 474.

The protest of the first note states, that on the due-day the notary demanded payment at the Bank of Metropolis, "the drawer having removed from Washington, and having been previously informed at his late place of business that he had not left any funds or made any provision for his notes." The liability of an endorser is conditional; the holder takes the note, with the understanding that demand and notice are precedent to his right to recover, and the endorser is entitled to strict notice. *Bell vs. Hagerstown Bank,* 7 *Gill,* 225. The demand at the bank is conceded to have been insufficient. But it is said, that the averment in the protest shows that the maker had left Washington, and that a demand was made at his late place of business. Upon the subject of demand where the maker has removed, we take the law to be correctly stated by Chancellor Kent, in 3 *Vol.* of his *Com., Lecture* 44, *page* 96: "The general principle is, that due diligence must be used to find out the party and make the demand, and the inquiry will always be, whether, under the circumstances of the case, due diligence has been used?" "If the party has absconded, that will, as a general rule, excuse the demand. If he has changed his residence to some other place, within the same State or jurisdiction, the holder must make endeavors to find it, and make the demand there; though, if he has removed out of the State subsequent to the making of the note or accepting the bill, it is sufficient to present the same at his former place of residence" (or of business.) "If there be no other evidence of the maker's residence than the date of the paper, the holder must make inquiry at the place of date, and the presumption is, that the maker resides where the note is dated, and that he contemplated payment at that place. But it is presumption only; and if the maker resides elsewhere within the State

Nailor *vs.* Bowie.

when the note falls due, and that be known to the holder, demand must be made at the maker's place of residence," or of business.

Although the drawer may have removed from Washington, it does not necessarily follow that he could not have been found, on inquiry, at some other place within the same jurisdiction. Nor are we to infer that a demand was made, from what the notary says was the information he received at the drawer's late place of business. Whether he presented the note there, or had it with him, does not appear. "The *mode* of demand is well settled. A demand without the presentation of the note, would in general be equivalent to no demand, and when it is made, the holder should be prepared and ready to produce it." 7 *G. & J.*, 89, *Farmers Bank vs. Duvall.* But the law is equally stringent as to the *time* of the demand. The word "previously," does not necessarily imply that it was made on the same day. It would have been quite proper for the holder or the notary to have made inquiry for the maker several days before the note became due, that he might make the demand at the proper place, and this word may have referred to some such inquiry. In the case of *Whiteford vs. Burckmyer and Adams,* 1 *Gill,* 142, a question arose as to the time that notice of demand and refusal was given to the endorser. It was held that "plain and satisfactory proof as to the time of service," was necessary. Applying the principle of that decision to the present case, the evidence must point, not to a demand at *some* time, but show that it was made on the day prescribed by law.

Where the notary in the protest states, that "notice of protest" was sent to the endorser, and the manner of such notice, it implies a demand and refusal to pay by the maker or acceptor. 4 *Gill,* 194, *Barry vs. Crowley.* 1 *Md. Rep.,* 512, *Hunter vs. Van Bomhorst.* But this presumption cannot arise when the protest itself shows that no sufficient demand and refusal had taken place. For these reasons we decide, that the first protest was insufficient and properly rejected by the court.

33    v.3

We entertain a different view of the protest of the second note. That shows a demand on the maker in person and his refusal to pay. To this extent, and for the purpose of proving due demand and refusal, it was sufficient *prima facie* evidence. But the notice to the appellee, as stated in the protest, was clearly insufficient. It did not inform him of a demand and refusal. 1 *Md. Rep.*, 59, 504. *Boehme vs. Carr, ante,* 202. This defect, perhaps, could have been supplied. It does not appear that the plaintiff had closed his case when the objection was made. *Wolfe vs. Hauver,* 1 *Gill,* 84. He was not obliged to rely solely on the protest. In the case in 1 *Gill,* 151, before referred to, notices for the endorsers, of demand and refusal had been sent, under cover, to the cashier of the bank. The court said that these facts could be proved by the protest, and their subsequent delivery to the parties to be charged, by other evidence. And so in 1 *Md. Rep.*, 512, where the protest did not show sufficient notice to the endorser, he was held liable upon his acknowledgment that he had received a "notice of protest." A party cannot always prove his case by one witness, or by one paper—several may be required. He may commence with any part of his evidence—*Caton vs. Carter,* 9 *G. & J.,* 476—and it is error to reject any that is *per se,* pertinent to the issue. When the plaintiff has closed, if there be a failure of proof as to any fact necessary to be proved, the defendant may ask an instruction that the evidence is not legally sufficient to maintain the action.

We approve of the court's refusal to grant the plaintiff's prayer contained in the second exception, for the reason that both the protests on which the prayer is predicated, had been rejected by the court, and were no longer in the cause; and also because the prayer assumed that the plaintiff was entitled to recover on both notes, when, as we have seen, the evidence as to each, if it had not been rejected, was insufficient to maintain the action.

Dissenting from the ruling of the court below, as to the admissibility of the protest of the note falling due on the

2nd August 1849, we reverse the judgment and order a procedendo.

*Judgment reversed and procedendo awarded.*