## DAVID W. MOORE *vs.* EDWARD HARDCASTLE.

A notary protested a note at *Easton*, and sent notice, by mail, to the endorser, directed to him at "*Denton*, Caroline county, Md.," Denton being the *county town* of that county.   The endorser resided in the lower district of that county, *twelve miles* from Denton, and his *nearest* and *usual* post-office was "*Hunting Creek Post-office*," distant *four miles* from his residence.   The notary proved that he so directed the notice because he knew the endorser resided in that county, but did not know his particular *residence* or *post-office*.   There was *no proof* that the notary made *inquiry* any where of *any person* as to the *residence* or *post-office* of the endorser.   HELD: That this notice was *insufficient* to charge the endorser.

An endorser is entitled to *strict notice*, by which is meant, not that he must actually *receive* such notice, but that *reasonable diligence* shall be employed, and *reasonable efforts* made, to give it.

The *general rule* is, that where the endorser lives in a different place from the holder, he may be notified through the mail at his *nearest* post-office, but if *sufficient inquiries* have been made, and information received, on which the holder has a right to rely, a *mistake* as to the *nearest* or *usual* post-office, does not deprive him of his remedy.

APPEAL from the Circuit Court for Caroline county.

*Assumpsit* brought by the appellant, as holder, against the appellee, as endorser, of a promissory note for $450, payable at the Farmers Bank, at Easton.   Plea, *non assumpsit*.

*Exception.*  The plaintiff offered in evidence the note sued on, which was dated "*Kinnes Landing*, Md., Sept. 24th, 1851," having proved the handwriting of the maker and en-

dorser, and also the protest made at Easton, and notice directed to the defendant at "*Denton, Caroline county.*" The notary who protested the note was then called to the stand, and proved that he so directed the notice because he knew that the defendant was a resident of Caroline county, but did not know his particular residence and post-office in said county. He also offered in evidence a letter from the defendant to the plaintiff, dated "*Caroline county, Sept. 10th,* 1853," written after this suit was commenced, in which the writer says: "To Mr. Moore. Sir—Mr. Tarr informs me that you positively refused to deduct one cent on the negotiable note *endorsed* by me. Now, sir, I made a very reasonable request merely to deduct the interest. I do not, I assure you, feel able to pay the principal. My means are limited, but I have some friends that would, no doubt, assist me. I told you *if you would do it,* you should have your money this fall, without any trouble. You *refused* the overtures, though, I think, extremely moderate. Now, sir," &c. The residue of the letter is a *defiance* to the plaintiff, telling him to proceed and collect the note at law, if he can.

The defendant then proved, that his residence was in the *lower district* of Caroline county, distant about *nine miles* from *Easton,* which is in Talbot county, and about *twelve miles* from *Denton,* the county town of Caroline county. That his *post-office* was "*Hunting Creek Post-office,*" about *four miles* from his residence; that he regularly obtained his letters and papers from this office, which had been established for *thirty years,* and that there was a *regular weekly mail* from *Easton* to said office. The plaintiff then proved, that during the years 1851, 1852 and 1853, the defendant was frequently in *Denton,* particularly on Tuesday, the usual public day, but, when he came there, remained but a few hours only, as other citizens, and then returned to his home.

The defendant's counsel then asked the court to instruct the jury "that there is no sufficient evidence in the case to establish such a notice to the defendant of the dishonor of the note sued for in this case, as to enable the plaintiff to recover in this action."

This prayer the court (HOPPER, J.) granted, and to this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Frank H. Stockett* for the appellant, argued:

1st. That the plaintiff used reasonable diligence to ascertain the post-office of the defendant, and failing to do so, all was done which commercial usage or law in such cases requires. 1 *Md. Rep.*, 68, *Graham vs. Sangston. Chitty on Bills*, 452. *Story on Prom. Notes, secs.* 205, 236, 237, 264. 3 *Md. Rep.*, 252, *Nailer vs. Bowie.* 3 *Kent*, 120. 4 *Sergt. & Rawle*, 480, *Duncan vs. McCullough.* 9 *Wheat.*, 598, *Magruder vs. Bank of Washington.* 14 *Louisiana Rep.*, 437, *Delavigne vs. Arnet.* 9 *How.*, 552, *Lambert vs. Ghiselin.*

2nd. That in the absence of proof that the appellant knew of the post-office of the defendant, the notice sent by the notary to him, and directed to the *county town* of the county of his residence was sufficient; and that, in doing this, the notary went further to give notice to the defendant than the law required, for it would have been sufficient to have directed the notice to him at Easton, where the note was made payable. 10 *Md. Rep.*, 98, *Sasscer vs. Whitely & Stone.* The rule is, that notice should be given at such place, that it would be most likely to reach the endorser promptly. 1 *Md. Rep.*, 70, *Graham vs. Sangston.* 3 *Kent*, 96. *Story on Bills, sec.* 351. *Story on Prom. Notes, sec.* 236.

3rd. Even if the notice was improperly sent, and, therefore, insufficient, yet the defendant's *letter* to the plaintiff, written after full knowledge of the circumstances, and after the commencement of this suit, is sufficient to prove a *waiver* of notice. *Hays & Jones*, 436, *Donnelly vs. Howie. Story on Prom. Notes, secs.* 275, 276, and *notes;* 362, and *notes;* 364, and *notes.*

*Oliver Miller* for the appellee:

1st. There is no evidence that the notary used reasonable diligence, or made any attempt, whatever, to ascertain the post-office of the defendant. Where the endorser and holder reside in different places, the notice must be sent to the *nearest post-office* of the endorser, and this rule will not be dispensed with, except upon proof that he was accustomed to receive his letters at some other office, to which the notice was sent. 4 *Gill*, 194, *Barry vs. Crowley.* 7 *Gill*, 223, *Bell vs. The Hagerstown Bank.* 6 *H. & J.*, 181, *Bank of Columbia vs. Magruder.* 3 *G. & J.*, 482, *Flack vs. Green.* Such being the law in regard to the place where the notice must be directed, when sent by mail, the authorities are clear that *due diligence* must be used to ascertain such place; the notary must make *diligent inquiry*, to ascertain the residence of the endorser. There is no proof that any inquiry was made in this case.

2nd. The letter of the plaintiff cannot be considered as a *waiver* of notice. A waiver, to be effectual, must be made with a full knowledge of all the facts and circumstances of the case. *Story on Prom. Notes, secs.* 359, 361 to 363. 23 *Wend.*, 379, *Tebbetts, et al., vs. Dowd.* But this letter is, in fact, no *waiver at all.* It admits no responsibility, but simply says, in effect, to the plaintiff, "You have *refused* a reasonable compromise, which I *offered* you, in reference to the note of which I am endorser, and now you may proceed to collect it *by law, if you can.*" It is a *defiance,* instead of an *admission,* a *reliance* upon legal rights, and not a *waiver* of them. It contains no *present promise* to pay, but merely recites a past *transaction;* nor does it make any reference to the *notice* or *protest.* But, at all events, it is but a *conditional* promise, and the *condition* not being *accepted,* the parties were left to their *legal rights,* as if no such promise had been made. 2 *Camp.*, 106, *note.* 1 *Term Rep.*, 713, *Goodall vs. Dolley.* 8 *Johns.*, 384, *Crain vs. Colwell,* and *note (b.)* 11 *Johns.*, 180, *Agan vs. M'Manus. Chitty on Bills,* 308. *Story on Prom. Notes, secs.* 278, 359.

3rd. But the question, whether this letter is, or is not, a waiver of notice, does not arise in the case. No reference is

62      v. 11.

made to it in the prayer which was granted, and the granting of that prayer would be entirely correct, even if this letter was an absolute and unconditional waiver, made by the defendant with full knowledge of the facts, and of his legal rights.

Tuck, J., delivered the opinion of this court.

The only question before us, on this appeal, is, whether reasonable diligence was used by the notary public, in protesting the note on which this suit was instituted, to charge the appellee as endorser?

The law is settled, that demand and notice are conditions precedent to the holder's right to recover on a promissory note, and that the endorser is entitled to strict notice; by which is meant, not that the party charged must actually receive such notice, but that reasonable diligence shall be employed, and reasonable efforts made, to give it. The general rule is, that where the endorser lives in another place, he may be notified, through the mail, at the nearest post-office. *Bell vs. Hagerstown Bank*, 7 *Gill*, 216. There are exceptions, as where the party has a known post-office, or is in the habit of receiving letters from more than one office, (*Crowley vs. Barry*, 4 *Gill*, 194,) and others, which need not be mentioned, as this case is not shown to be without the operation of the general principle: "If sufficient inquiries have been made, and information re ceived, upon which the holder has a right to rely, a mistake as to the nearest post-office, or usual post-office, does not deprive him of his remedy." *Lambert vs. Ghiselin*, 9 *How.*, 552  *Sasscer vs. Whitely*, 10 *Md. Rep.*, 98.

Applying this test, it is very clear that the court below decided correctly as to the legal insufficiency of the evidence set out in the bill of exceptions, to show notice to the appellee. The note was protested at Easton, of which the notarial protest was the only evidence offered, and the notary was examined to prove that notice of protest was sent to the endorser. This witness says, "That he sent the notice by mail, addressed to the appellee at Denton, Caroline county, because he knew that he resided in that county, but did not know his particular residence and post-office." It appears that he lived twelve miles

Moore *vs.* Hardcastle.

from Denton, and that his nearest and usual post-office was only four miles from his residence, which was nearer, by three miles, to Easton, where the protest was made, than to Denton, to which the notice was sent. We are not informed, by the record, that the notary made inquiry any where, or of any person, as to the residence or post-office of the endorser. It would be a plain perversion of the law to charge him on such evidence of notice.

But it is said, that the defendant's letter is evidence that he had received notice of protest; and, also, of a promise to pay the debt. We think that it is clearly insufficient for the first purpose, because there is no mention of the protest or notice, and nothing from which it can be inferred that he had received such notice. It would seem that his first knowledge that the note had not been paid, was received from the plaintiff's attorney, for the purpose of the letter appears to have been to inform the plaintiff that, inasmuch as he had declined the compromise offered to the attorney, he would not pay any thing.

As to the effect of this letter as a promise to pay the debt, which, it is said, is a waiver of proof of notice, we may remark, that, while we think it also insufficient for that purpose, the point argued here, in this view of the letter, is not presented by the exception. The prayer offered and granted by the court, relates only to the legal sufficiency of the evidence adduced by the plaintiff, that the defendant had been duly notified of the dishonor of the note, and not to this letter as a waiver of any defence for want of due diligence on the part of the plaintiff, in giving such notice.

*Judgment affirmed.*